UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ATOUSA VALI SICHANI**,<br><br>Plaintiff,<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**,<br><br>Defendant. | Case No. 22-cv-1584 (CRC) |

**OPINION AND ORDER**

Plaintiff Atousa Vali[1] headed the Washington Metropolitan Area Transit Authority's ("WMATA") Automatic Train Control engineering department until her termination in July 2021. Compl. ¶ 11. Automatic Train Control ("ATC") is a speed and movement-control system that functions as a safeguard against human error and other safety hazards. Id. ¶ 12. Dr. Vali, who holds a Ph.D. in electrical and computer engineering, claims that in May 2021, her supervisor repeatedly asked her to "sign off" on a document—called a "Temporary Use Notice"—that, as the Court understands it, had to be executed before WMATA could begin operating a new ATC system at its Alexandria, Virginia rail yard. Id. ¶¶ 8, 13–14. Dr. Vali alleges that she, along with other members of her department, refused to bless the notice because engineering documents affecting the ATC system were missing from the materials WMATA received from the system's manufacturer, raising safety and reliability concerns. Id. ¶¶ 14–15, 23. Dr. Vali says that she voiced those concerns to the Washington Metrorail Safety Commission and

---

[1] Although Plaintiff's name in the complaint caption is Atousa Vali Sichani, both sides refer to her as Dr. Atousa Vali. The Court will follow suit.

WMATA's Office of Inspector General, as well as to senior management. Id. ¶¶ 31, 54. Soon thereafter, she was fired. Id. ¶ 56. This suit followed.

Dr. Vali's one-count complaint alleges that she was terminated in retaliation for engaging in protected activities in violation of Washington, D.C.'s primary whistleblower protection statute, the Employees of District Contractors and Instrumentality Whistleblower Protection Act ("DCWPA"). Compl. ¶¶ 59–73. WMATA moves to dismiss Dr. Vali's complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that her DCWPA claim is barred by sovereign immunity.[2] Mot. Dismiss ("Mot.") at 7–8. WMATA contends that it is immune from suit under the statute because the three signatories to the interstate compact that created WMATA—the District of Columbia, Maryland, and Virginia—have not all waived the Authority's immunity from suit under the DCWPA. Id. at 9–12. Concurring, the Court will grant WMATA's motion.[3]

## I. Legal Standards

As "[f]ederal courts are courts of limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), a court must ensure it has jurisdiction over a claim before it proceeds to the merits. Moms Against Mercury v. FDA, 483 F.3d 824, 826 (D.C. Cir. 2007). Courts must dismiss claims over which they lack subject matter jurisdiction, which include claims barred by sovereign immunity. Harris v. Wash. Metro. Area Transit Auth., 490 F. Supp.

---

[2] WMATA actually moves for dismissal under Rule 12(b)(6), but since WMATA's immunity argument goes to the Court's subject matter jurisdiction, the Court will construe the motion as brought under Rule 12(b)(1).

[3] Dr. Vali has also moved for leave to amend her complaint to add a wrongful-discharge tort claim under the public-policy exception to the at-will employment doctrine. The Court addressed that motion at the March 22, 2023 motions hearing. For the reasons stated from the bench, the Court denied the motion for leave to amend without prejudice to renewal.

3d 295, 305 (D.D.C. 2020) (citing Auster v. Ghana Airways Ltd., 514 F.3d 44, 48 (D.C. Cir. 2008); Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1216 (D.C. Cir. 1997)).

In assessing a motion brought under Federal Rule of Procedure 12(b)(1), a court "assume[s] the truth of all material factual allegations in the complaint, and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020) (quoting Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). But it may also consider materials outside the pleadings. Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The "plaintiff bears the burden of establishing jurisdiction." Harris, 490 F. Supp. 3d at 305 (citing Knapp Med. Ctr. v. Hargan, 875 F.3d 1125, 1128 (D.C. Cir. 2017)).

## II. Analysis

Federal courts are generally prohibited, under the Eleventh Amendment, from exercising jurisdiction over claims against a state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (interpreting the Eleventh Amendment to establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state" (cleaned up)). WMATA is not a part of a single state. Rather, it was created by an interstate compact signed by Maryland, Virginia, and the District of Columbia, and ratified by Congress, in 1966. Morris v. Wash. Metro. Area Transit Auth., 781 F.2d 218, 219 (D.C. Cir. 1986) (citing Pub. L. No. 89-774, 80 Stat. 1324 (1966)). By entering the compact, the three signatory states conferred their Eleventh Amendment immunity on WMATA. Beebe v. Wash. Metro. Area Transit Auth., 129 F.3d 1283, 1287 (D.C. Cir. 1997). Absent an exception to immunity, then, WMATA may not be sued in this Court.

There are two exceptions to immunity under the Eleventh Amendment: (1) "a state may waive its immunity and consent to suit" or (2) "Congress may exercise its enforcement power under § 5 of the Fourteenth Amendment to abrogate a state's immunity without its consent." Barbour v. Wash. Metro. Area Transit Auth., 374 F.3d 1161, 1163 (D.C. Cir. 2004) (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)) (cleaned up). The first waiver pathway is at issue here. Courts will find a waiver if a state makes a "clear declaration that it intends to submit itself to [a federal court's] jurisdiction." Coll. Sav. Bank, 527 U.S. at 675–76 (cleaned up). This test is a "stringent one." Barbour, 374 F.3d at 1163 (citing Coll. Sav. Bank, 527 U.S. at 675) (cleaned up). The Supreme Court has instructed lower courts to "give effect to a State's waiver of Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" Feeney, 495 U.S. at 305–06 (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 239–40 (1985)) (cleaned up). Moreover, in the context of interstate compacts, each signatory state must consent to an immunity waiver. See, e.g., Slack v. Wash. Metro. Area Transit Auth., 325 F. Supp. 3d 146, 155–56 (D.D.C. 2018); Hunter v. Wash. Metro. Area Transit Auth., 485 F. Supp. 3d 65, 81 (D.D.C. 2020).

Judge McFadden of this Court had occasion to apply these principles in a similar suit brought against WMATA under the DCWPA. In Slack, he held that the Authority was immune from suit under the DCWPA because, while the DCWPA would permit suits against WMATA once Virginia and Maryland enacted "similar provisions for WMATA whistleblowers," neither state had passed laws satisfying that requirement. 325 F. Supp. 3d at 156–57 (quoting D.C. Code § 2-223.07(b)); see also Hunter, 485 F. Supp. 3d at 81–82 (holding that WMATA had sovereign immunity from DCWPA whistleblower claim).

4

WMATA urges the Court to apply Slack's holding here. Mot. at 9–12. Dr. Vali responds that Slack's reasoning was invalidated in 2020 when Maryland amended its whistleblower protection law to cover WMATA employees. Opp'n Mot. Dismiss at 8 ("Opp'n"); see Md. Code Ann., State Pers. & Pens. § 5-301 (West). That amendment stated that the Maryland law would apply to "all employees of" WMATA if both Virginia and the District of Columbia "enact similar whistleblower protections or waive their sovereign immunity as applied to [WMATA] for the purpose of providing whistleblower protections." Md. Code Ann., State Pers. & Pens. § 5-301(a)(2) (West).

Dr. Vali may well be correct that the Maryland amendment constitutes an express (albeit conditional) waiver of WMATA's immunity from employee whistleblower suits. But, under the terms of the DCWPA, the Maryland amendment did not waive WMATA's sovereign immunity under the DCWPA unless Virginia, too, has enacted a similar waiver. Dr. Vali does not suggest that Virginia has amended its 2009 whistleblower law or passed a new law permitting whistleblower suits by WMATA employees. Rather, she insists that WMATA whistleblowers have always been covered by the Virginia statute and, therefore, all three signatories have waived WMATA's conferred immunity. Opp'n at 8, 12–13. The argument spins out as follows. Virginia's statute—the Fraud and Abuse Whistle Blower Protection Act ("VFAWPA")—states that no "employer" may discriminate or retaliate against covered whistleblowers. Va. Code Ann. § 2.2-3011 (West). The statute defines "employer" to include supervisors within the relevant "governmental agency." Id. § 2.2-3010. A "governmental agency," in turn, includes an "instrumentality of state government in the executive branch listed in the appropriation act[.]" Id. As a result, Dr. Vali suggests, "the Act extends to any governmental agency receiving state

5

funds under the appropriation act." Opp'n at 12. And because WMATA is a government agency that receives state appropriations, it is an "employer" subject to the VFAWPA. Id. at 12–13.

This is not the type of "clear declaration" that is required to recognize a state's waiver of Eleventh Amendment immunity. To begin, unlike the D.C. and Maryland statutes, there is no "express language" in Virginia's Act waiving WMATA's immunity. Feeney, 495 U.S. at 305. Neither "immunity" nor "WMATA" is mentioned in the statute, and nowhere does it refer to the other jurisdictions or specifically indicate that whistleblower suits may be brought by WMATA employees.

Absent an express waiver, Dr. Vali must show through "overwhelming implication from the text" that "leave[s] no room for any other reasonable construction" that Virginia has waived WMATA's Eleventh Amendment immunity from suits by whistleblowers. Feeney, 495 U.S. at 305. But even if precedent permitted the Court to imply a waiver by parsing the statute in the circuitous fashion Dr. Vali has, her reading still would not support a waiver finding under that exacting standard. As noted above, the Virginia law applies to "any agency . . . or instrumentality of state government in the executive branch listed in the appropriation act." Va. Code Ann. § 2.2-3010 (West). Dr. Vali does not point the Court to any list of executive branch agencies in any Virginia appropriation act. Based on its own research, the Court has located the most recent budget bill adopted by the Virginia legislature—for the 2022-2024 biennium. See H.B. 30, 1st Spec. Sess. (Va. 2022), https://budget.lis.virginia.gov/get/budget/4623/HB30/. That bill separates operating expenses from capital project expenses, and the former is then further organized by the governmental departments or agencies receiving the funds (i.e., legislative department, judicial department, executive department, independent agencies, and state grants to nonstate entities). Id. The executive department section of the bill then enumerates the

executive offices and entities receiving funding, assigning a section number to each (for instance, the Department of Aviation is listed under § 1-123 and the Department of Motor Vehicles, under § 1-124). Id. These executive entities are designated in boldface type and centered on the page. Id. WMATA is not listed among these entities. As far as the Court can tell, the only references in the bill to WMATA are a few cursory mentions within the Department of Motor Vehicles section, id. § 1-124, and the Department of Rail and Public Transportation section, id. § 1-126.

Dr. Vali interprets the VFAWPA's extension of coverage to "listed" executive branch agencies as including any agency or instrumentality, like WMATA, that receives appropriated funds. But that interpretation ignores the statute's reference to "listed" agencies. Being "listed" is different than simply being mentioned or referenced. See List, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/list (defining "list" (noun) as "a simple series of words or numerals," and "list" (verb) as "to make a list of[,] enumerate"). And given WMATA's omission from the list of executive agency departments in the bill, the VFAWPA can reasonably be interpreted to exclude WMATA employees from its sweep. Accordingly, because there is a reasonable alternative construction of the text than the one Dr. Vali offers, there is no "overwhelming implication" that Virginia waived WMATA's Eleventh Amendment immunity when it enacted the VFAWPA.[4]

The Court thus holds that WMATA retains its sovereign immunity for Dr. Vali's DCWPA claim.[5]

---

[4] Moreover, Dr. Vali points to no legal authority indicating that WMATA satisfies the statute's requirement that covered employers be part of Virginia's "executive branch."

[5] As Virginia has not enacted a waiver of sovereign immunity, the Court need not reach the question of whether Congress would have to consent to a waiver of sovereign immunity in the event all three jurisdictions passed similar statutes. See Slack, 325 F. Supp. 3d at 157 n.5 (withholding judgment on whether "Congress has consented to the application of the DCWPA to

### III. Conclusion

For these reasons, it is hereby

**ORDERED** that [4] Defendant's Motion to Dismiss the complaint is **GRANTED**.

**SO ORDERED**.

                                        CHRISTOPHER R. COOPER
                                      United States District Judge

Date: March 29, 2023

---

WMATA").  The Court also need not decide whether Dr. Vali's claim is barred by the DCWPA's statute of limitations.